**John M. Coletti, OSB No. 942740**
john@paulsoncoletti.com
**Paulson Coletti Trial Attorneys PC**
1022 NW Marshall Street, Suite 450
Portland, OR 97209
Phone: (503) 226-6361
Fax: (503)226-6276

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON - PORTLAND DIVISION

| | |
|---|---|
| RIKYLE HOLSTINE; and LACEY HOLSTINE, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES OF AMERICA DEPARTMENT OF VETERANS AFFAIRS, <br><br> Defendant. | CASE NO. <br><br> COMPLAINT <br><br> **Federal Tort Claim** <br> **(28 U.S. Code § 1346(b)(1))** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs allege as follows:

### JURISDICTION AND VENUE

1.

This Court has jurisdictionion pursuant to 28 U.S.C. § 1346(b)(1).

/ / /

/ / /

Page 1 of 9 – COMPLAINT

2.

Plaintiffs served defendant with Tort Claim Notices and more than six months have passed with no agency action.

3.

All of the relevant acts and omissions of defendant alleged herein were committed in the State of Oregon.

## PARTIES

4.

Rikyle and Lacey Holstine are a married couple and are residents of the State of Oregon.

5.

Defendant is a federal governmental agency.

## COMMON ALLEGATIONS

6.

Mr. Holstine was a veteran receiving medical care at the VA Hospital in Portland, Oregon.

7.

On or about February 9, 2018, Mr. Holstine began treating at the VA with Jeremy Trone, Family Nurse Practitioner (FNP), for chronic right knee pain. Mr. Holstine reported to FNP Trone that the pain in his knee increased over the last several months and that he had noticed decreased muscle mass in the right upper leg despite regular exercise. Mr. Holstine reported that the pain interfered with his functioning and that he was unable to run. FNP Trone diagnosed right chronic knee pain and muscle atrophy which was increasing. He ordered an MRI and stated that he would

Page 2 of 9 – COMPLAINT

consult with an orthopedist once the results were available. He also advised Mr. Holstine to continue with exercise and ordered a physical therapy consult.

8.

An MRI without contrast was performed on March 1, 2018, which, in part, demonstrated a "well-defined lobulated mass within the medial infrapatellar fat pad." Further evaluation was recommended with a contrast MRI because the mass could represent a low flow vascular malformation or other etiology which "cannot be excluded."

9.

On March 14, 2018, an MRI with contrast was performed which demonstrated a "well defined 15.4 x 19.1 x 8.2 mm tubular and serpiginous mass which was indeterminant on T2, hypointense on T1 and demonstrates enhancement. This is just deep to the medial patellar retinaculum and a feeding vessel appears to extend into the mass inferiorly." Following the MRIs, VA radiologists recommended to FNP Trone that he order an ultrasound to follow up the MRI.

10.

Without confirming the type of ultrasound recommended, FNP Trone ordered a venous rather than general ultrasound which occurred on May 16, 2018, and confirmed only that the arteries and veins appeared patent and without abnormality.

11.

On or about June 20, 2018, Mr. Holstine contacted Randolf Warren, RN questioning whether the imaging results explained his symptoms. Mr. Holstine told Nurse Warren that his right knee was "bowing inward more" as compared to the left knee noting a "marked change." Mr. Holstine also reported that his right leg was weaker and that he was having more difficulty placing weight on it.

Page 3 of 9 – COMPLAINT

Nurse Warren advised that he would forward the information to FNP Trone for recommendations, including orthopedic referral / additional evaluation or imaging and/or PT referral. Nurse Warren documented in his chart note that he did not mention the possibility of an orthopedic consult. Nurse Warren forwarded the questions to FNP Trone with a request that FNP Trone alert him regarding the next step and/or let Mr. Holstine know when PT had been ordered. Rather than refer Mr. Holstine to a specialist and/or send Mr. Holstine for additional evaluation or imaging, including an orthopedic and/or vascular referral, FNP Trone referred Mr. Holstine to physical therapy which began on July 25, 2018, with physical therapist Kathryn Bachinsky.

12.

Over the course of another year, Mr. Holstine continued to receive physical therapy off and on at the VA with physical therapists Kathryn Bachinsky and Kelsey Cleveland-Rubeor and Ethelbert Yap, none of whom suggested an orthopedic evaluation or further follow up with regards to the mass in Mr. Holstine's leg.

13.

On or about December 13, 2019, Mr. Holstine was seen again by FNP Trone with the primary complaint of chronic right knee pain. An order was placed by FNP Trone for an orthopedic consult and imaging as needed.

14.

Prior to seeing an orthopedist, Mr. Holstine was scheduled for vascular imaging which was cancelled due to the covid pandemic as non-urgent.

15.

Following his December 2019 appointment with FNP Trone, Mr. Holstine was advised

that his injuries were not service related and the VA discontinued payment of his benefits. After disputing the termination of his benefits, Mr. Holstine returned to physical therapy on or about April 21, 2021, with Ethelbert Yap, PT and was noted to have significant atrophy of his quads, severe lack of extension and flexion and more sensitivity to touch in the anteromedial knee. There was also an increase in the size of the knee with no swelling noted. His movement was limited by pain and stiffness and he walked with a limp due to lack of range of motion. He also required a cane.

16.

On June 14, 2021, Mr. Holstine was again evaluated by FNP Trone who noted that Mr. Holstine was restarting physical therapy and was using a cane. Mr. Holstine requested treatment for anxiety and reported that his weight was down because he lost muscle in his legs due to inactivity and poor appetite. FNP Trone recommended continued physical therapy with leg strengthening, ultrasound and then an orthopedic consult as needed. He recommended follow up in four weeks by phone.

17.

On or about August 27, 2021, an ultrasound of the right knee was performed revealing a mass at the anteromedial aspect of the right knee which was 5.1 x 4.4 x 2.6 cm and was extensively vascularized within the infrapatellar fat pad. An additional MRI was recommended and was performed on October 27, 2021, revealing marked interval growth of the mass previously confined to the infrapatellar fat pad in 2018, now extensively infiltrating not only anterior soft tissues and intercondylar notch of the knee but also nearly the entire patella as well as the anterior half of the proximal tibia level of the tibial tubercle with associated bone destruction.

/ / /

Page 5 of 9 – COMPLAINT

18.

On or about October 29, 2021, Mr. Holstine was examined by Dr. Sarah Lindsey, an orthopedist, who performed an expedited biopsy. The biopsy revealed the growth of an aggressive tumor with extensive bony infiltration and destruction of the knee with high risk of malignancy.

19.

It was later determined that Mr. Holstine had a synovial sarcoma in his right leg which was present in the MRIs of March 2018.

20.

On or about November 22, 2021, Dr. Kenneth Grundle performed an above the knee amputation of Mr. Holstine's right leg. Additionally, a port was placed for chemotherapy.

21.

Following extensive imaging studies of the chest, it was determined that Mr. Holstine has nodules in his lungs, potentially representing metastasis, which today remain closely monitored following the termination of chemotherapy.

22.

At all times mentioned, the medical staff involved in Mr. Holstine's treatment and care while at the VA were acting in the course and scope of their employment for the defendant and were the actual and/or apparent agents of the defendant.

**FIRST CLAIM FOR RELIEF**

**(Negligence)**

23.

Defendant, through the acts and omissions of its employees was negligent in one or more of the following particulars:

a. In failing to timely diagnose and treat Mr. Holstine's sarcoma;

b. In terminating Mr. Holstine's care at the VA as non-service related thus terminating his continuity of care;

c. In failing to order orthopedic, vascular, and other consults and additional imaging studies and biopsies in 2018-20 in order to determine the type of mass within his leg prior to its growth; and

d. In failing to warn Mr. Holstine in 2018 that the mass in his leg could represent cancer.

24.

As a result of the negligence of the defendant, Rikyle Holstine's right leg was amputated and he now has an increased likelihood of metastatic cancer as a result of the delayed diagnosis and treatment of the synovial sarcoma in his right leg. Mr. Holstine has incurred economic damages in the form of past and future care medical care and expenses, impaired earnings, lost wages, and substitute domestic services in a reasonable amount to be determined at trial but not expected to exceed $5,000,000.

25.

As a further result of the negligence of the defendant, Rikyle Holstine also suffered noneconomic damages in the form of past and future pain and suffering as well as loss of enjoyment of life and inability to engage in activities apart from gainful employment. To date, Rikyle's noneconomic damages are in a reasonable amount to be determined at trial but not expected to exceed $35,000,000.

26.

In the event that defendants allege, put on evidence, argue or prove that Rikyle Holstine would have likely suffered either amputation or metastatic cancer, defendant's negligence has nonetheless caused Mr. Holstine to lose a substantial chance of at least 30% probability of achieving a better medical outcome than described above.

27.

As a result of that loss of chance, Mr. Holstine is entitled to economic and non-economic damages as described above for the value of his loss of chance. That value is to be calculated by the finder of fact considering the unfavorable medical outcomes and harms described above in light of the likelihood of avoiding those outcomes and harms if the defendant had not been negligent.

**SECOND CLAIM FOR RELIEF**

**(Loss of Consortium)**

28.

At all times mentioned, Lacey Holstine, was and continues to be married to her husband, Rikyle Holstine. As a direct and proximate result of the defendant's negligence and Mr. Holstine's resulting injuries, Mrs. Holstine has suffered his loss of society, companionship, consortium, services and support all to her economic and noneconomic damage in an amount to be determined at trial, but not expected to exceed $6,000,000.

/ / /

/ / /

/ / /

/ / /

Page 8 of 9 – COMPLAINT

**WHEREFORE,** Plaintiffs pray for judgment as alleged in each claim stated above.

DATED this 25th day of May, 2023.

          PAULSON COLETTI TRIAL ATTORNEYS PC

          *By: /s/John M. Coletti*
          John M. Coletti, OSB No. 942740
          john@paulsoncoletti.com
          1022 NW Marshall Street, Suite 450
          Portland, OR 97209
          T: 503.226.6361
          Attorneys for Plaintiffs

Plaintiffs demand trial by jury.

          PAULSON COLETTI TRIAL ATTORNEYS PC

          *By: /s/John M. Coletti*
          John M. Coletti, OSB No. 942740
          john@paulsoncoletti.com
          1022 NW Marshall Street, Suite 450
          Portland, OR 97209

          Attorneys for Plaintiffs